Jeff Dominic Price  |  SBN 165534
2500 Broadway, Suite 125
Santa Monica, California 90404
jeff.price@icloud.com
Tel. 310.451.2222

Attorney for the plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE L. BRADLEY, Individually, and as Co-Successor in Interest, and KEENAN SHUN BRADLEY, SR., Individually, and and as Co-Successor in Interest of KEENAN SHUN BRADLEY, JR., DECEASED, | No. 2:17-CV-02313-KJM-AC |
| | SECOND AMENDED COMPLAINT |
| Plaintiffs, | 1. 42 U.S.C. § 1983 – Unreasonable Search and Seizure and Deprivation of Life – Survival Action; |
| vs. | 2. 42 U.S.C. § 1983 – Deprivation of the Rights of Plaintiff to Familial Relationships with the Decedent; |
| COUNTY OF SAN JOAQUIN, SAN JOAQUIN COUNTY SHERIFF'S OFFICE, SAN JOAQUIN COUNTY SHERIFF STEVE MOORE, SAN JOAQUIN COUNTY DEPUTY SHERIFF MICHAEL KNIGHT, AND DOES 1 THROUGH 20, INCLUSIVE, | 3. 42 U.S.C. § 1983 – Municipal (*Monell*) Liability; |
| | 4. Cal. Civ. Code § 52.1 – Violation of Civil Rights; |
| | 5. Cal. Govt. Code § 845.6 – Denial of Medical Care; |
| | 6. Assault & Battery; and, |
| | 7. Negligence (Wrongful Death) |
| Defendants. | **DEMAND FOR JURY TRIAL** |

JURISDICTION

i.     This is a civil rights wrongful death/survival action arising from the

Defendants' unlawful seizure of Keenan Shun Bradley, Jr., Deceased, occurring in

San Joaquin County, California, resulting in the death of Keenan Shun Bradley, Jr. on

November 1, 2016. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988,

the First, Fourth, and Fourteenth Amendments to the Constitution of the United States

of America. Jurisdiction is conferred upon this court by 28 U.S.C. §1331 and §

1343(a)(3) and (4) and the statutory and constitutional provisions, *supra*; the state law claims for relief are within the supplemental jurisdiction of the court pursuant to 28 U.S.C. § 1367. The amount in controversy, excluding interest and costs, exceeds the minimum jurisdictional limits of this court.

ii.     Plaintiff (the singular, "Plaintiff", may, as the context requires, denote the plural, "Plaintiffs", herein) has complied with the California Tort Claims Act, Government Code § 910 et seq., by presenting a claim to the public entity within the time period permitted by statute; the claim was denied by letter dated May 12, 2017.

VENUE

iii.     Plaintiff's claims herein arise out of an incident involving San Joaquin County Deputy Sheriff Michael Knight, in the County of San Joaquin, State of California, and within this judicial district.

PARTIES

iv.     Plaintiff DENISE BRADLEY, is a competent adult who appears here individually and as co-successor in interest of KEENAN SHUN BRADLEY, JR., deceased (hereinafter "Decedent"), who had no issue; she is the mother of the Decedent and therefore qualifies as his successor in interest pursuant to Cal. Civ. Proc. Code § 377.11 and, as stated in the attached declaration, marked Exhibit 1, is authorized under Sections 377.20, 377.30 and 377.60 and by federal law to act on behalf of Decedent's estate as Decedent's successor in interest to prosecute causes of action presented in this case.

v.     Plaintiff KEENAN SHUN BRADLEY, SR., is a competent adult who appears here individually and as co-successor in interest of KEENAN SHUN BRADLEY, JR., deceased; he is the father of the Decedent and therefore qualifies as his successor in interest pursuant to Cal. Civ. Proc. Code § 377.11 and, as stated in the attached declaration, marked Exhibit 1, is authorized under Sections 377.20, 377.30 and 377.60 and by federal law to act on behalf of Decedent's estate as

1  Decedent's successor in interest to prosecute causes of action presented in this case.

2       vi.      Defendant COUNTY OF SAN JOAQUIN ("County" or "San

3  Joaquin"), is a public entity and local government entity established and organized

4  under the laws and Constitution of the State of California, and owns, operates,

5  manages, directs and controls the San Joaquin County Sheriff's Office, also a public

6  entity, which employs other Defendants in this action.

7       vii.     Defendant SAN JOAQUIN COUNTY SHERIFF'S OFFICE

8  (hereinafter "SJSO"), is an agency of Defendant, COUNTY OF SAN JOAQUIN and

9  a separate suable entity.

10       viii.    Defendant San Joaquin County Sheriff-Coroner STEVE MOORE

11  ("Moore" or "Sheriff") is, and at all times relevant hereto, was the elected Sheriff of

12  the County of San Joaquin and a police officer and in doing the acts herein alleged,

13  Sheriff Moore acted within the course and scope of his agency and employment, and

14  under color of state law; Moore is being sued in his individual capacity as a final

15  policymaker for the County who ratified the actions and decisions of Knight and the

16  bases for them and as the Sheriff for the County and a *Monell* defendant. At all

17  material times, Sheriff Moore was invested with final policymaking authority by and

18  for the SJSO and the County and, was responsible for all policies, procedures,

19  supervision, and training for the San Joaquin County Sheriff's Department.

20       ix.      Defendant MICHAEL KNIGHT ("Knight") is, and at all times

21  relevant hereto, was a police officer employed by defendant County of San Joaquin

22  and the SJSO as a Deputy Sheriff, as defined in California Penal Code §§ 830 and

23  830.1; in doing the acts alleged in this pleading, as is more fully described below,

24  Knight acted within the course and scope of his employment as an off-duty police

25  officer and his authority under Penal Code Section 830.1, and under color of state

26  law. Additionally, Knight has asserted – a party admission under Fed. R. Evid.

27  801(d)(2) – that he was the victim of an assault immediately before he shot and killed

28

Decedent, and thus Knight has admitted that he was acting within the scope of his employment and under color of law at the time he shot and killed Decedent.

x.      Plaintiffs bring these claims pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions; Plaintiffs also bring these claims individually and on behalf of KEENAN SHUN BRADLEY, JR., Deceased, on the basis of 42 U.S.C. §§ 1983 and 1988, the Constitution of the United States of America, and federal and state civil rights law.

xi.      The true names and capacities of defendants sued herein as Does 1-20 are unknown to plaintiffs, who sue said defendants by such fictitious names, and plaintiffs will seek leave to amend this complaint when the same are ascertained. Each Doe defendant was an employee or agent of the County, and at material times acted within the course and scope of that relationship. Plaintiffs are ignorant of the true names and capacities of defendants sued here as Does 1-20, inclusive, because this information has been unascertainable as of the date of filing of this complaint as many of these Doe defendants may be law enforcement officers, civilian law enforcement agents, informants, and representatives of defendants County, SJSO, Moore, Knight or other County employees, and as such many of their records are protected by state statute and can only reasonably be ascertained through formal discovery. Each defendant Doe herein is in some manner responsible for the injuries and damages herein alleged.

xii.      Each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining defendants, and in doing the acts alleged in this complaint, was acting within the course and scope of such relationship, and each defendant gave consent, aid and assistance to each of the remaining defendants and ratified and/or authorized the acts or omissions of each defendant as alleged in this pleading, except as may be otherwise

specifically alleged.

xiii.     This complaint may be pleaded in the alternative in accordance with Federal Rule of Civil Procedure 8(d).

AVERMENTS

1.     Before he was shot and killed by Defendant Michael Knight on November 1, 2016, Decedent had no problems with law enforcement; he was not a target of any investigation, nor was there any warrant or probable cause for his arrest.

2.     On the day of his death, Decedent was employed as a security guard.

3.     Decedent had received his weekly wages from his employer on Thursday, November 1, 2016.

4.     Before his death, Decedent was a positive role model to children in his neighborhood and often spent time with them.

5.     Prior to his death, Decedent was described by family as a young man who would offer his assistance to others without being asked.

6.     Prior to his death, Decedent resided with his mother.

7.     Before his death, Decedent was very close to his mother and had her name tattooed on his arm.

8.     The decedent, Keenan Bradley, Jr., supported his mother financially, regularly giving her a portion of his paychecks.

9.     Decedent and his father, Keenan Shun Bradley, Sr., had a close relationship even though they did not reside in the same county.

10.     Decedent and his father talked on the telephone almost every day.

11.     Keenan Shun Bradley, Sr., gave birthday and Christmas gifts to his son, Decedent, frequently.

12.     When Decedent bought his first car, his father gave him part of the down payment.

13.     Decedent visited his father in Arkansas when he was approximately 15

years old, and again for approximately three months, after his high school graduation, and also in May and June 2015.

14.    Decedent did not possess a gun.

15.    Decedent was not a member or an affiliate of a criminal street gang.

16.    Decedent avoided interaction with others who were thought to have been involved in illegal activity.

17.    Decedent set goals for himself such as saving a portion of his weekly wages and staying positive and respectful.

18.    On the evening of November 1, 2016, between approximately 9:34 p.m. and 10:18 p.m., Decedent was present at the Marina Village West Apartments property, located at 3525 W. Benjamin Holt Drive, Stockton, California.

19.    On occasion Decedent visited friends at the Marina Village West Apartments and was seen tossing a football, talking and eating pizza.

20.    On November 1, 2016, at approximately 9:34 p.m., Decedent spoke by telephone with his cousin, Shauniqua Perkins.

21.    During the telephone call Decedent told Ms. Perkins he would pick her up at her residence and drive her to work that evening.

22.    Ms. Perkins was scheduled to be at work at approximately 10-10:15 p.m. in Tracy, California.

23.    Decedent routinely drove Ms. Perkins to work.

24.    On November 1, 2016, Decedent visited with friends at the apartment complex located at the Marina Village West Apartments.

25.    Sometime after 9:30 p.m. on November 1, 2016, Decedent stated to his friends that he was leaving.

26.    Between approximately 9:30 p.m. and 10:18 p.m., Decedent entered the parking area at the apartment complex where the shooting took place.

27.    On November 1, 2016, Defendant Michael Knight resided at the Marina

Village West Apartments, 3525 W. Benjamin Holt Drive, Stockton, California, in a unit located on the ground level of the building.

28.   Defendant Knight was involved in the sales of merchandise on the black market and there was traffic related to that activity at his residence.

29.   Decedent and others knew that Defendant Knight was a Deputy Sheriff.

30.   Before firing the shots that killed Decedent Keenan Bradley, Jr., defendant Knight drew a concealed handgun, which he was only permitted to do pursuant to Penal Code § 25450, announced his status as a Deputy Sheriff and yelled "get down, get down."

31.   After announcing his presence and his status as a Deputy Sheriff, defendant Knight fired, shooting Decedent, in the back, killing him.

32.   Prior to and at the time defendant Knight shot and killed the Decedent no one was brandishing a weapon in view of Knight or pointing a gun at Knight.

33.   Prior to and at the time defendant Knight shot and killed the Decedent, the Decedent was unarmed.

34.   Prior to and at the time defendant Knight shot and killed the Decedent, the Decedent was not posing any threat to defendant Knight.

35.   Prior to and at the time defendant Knight shot and killed the Decedent, the Decedent was not resisting arrest.

36.   At the time defendant Knight shot and killed the Decedent and from the perspective of a reasonable officer in the position of Knight, there was not a serious crime in progress because Knight was a knowing participant in the transaction involving the other individuals present.

37.   Defendant Knight fired the firearm recklessly.

38.   Defendant Knight hit his building on the lower level with two bullets and hit the upper level of the building with one bullet.

39.   The Stockton Police Department found seven shell casings, all of which

1   were fired from Defendant Knight's weapon.

2       40.    Police investigators uncovered no evidence that any other weapon was

3   fired during the incident on November 1, 2016, during which defendant Knight shot

4   and killed Decedent Keenan Bradley, Jr.

5       41.    As Decedent was walking away from Defendant Knight, he was struck

6   by a bullet from Defendant Knight's gun.

7       42.    Decedent was shot as he was moving away from Knight and was in no

8   way a threat or immediate or imminent threat to Defendant Knight or anyone else.

9       43.    Decedent was an unarmed bystander to the events that led to Defendant

10   Knight discharging his weapon.

11       44.    After the shooting began, Toney Lay, aka "Hector", and Lamar Brown,

12   aka "Marty", ran toward a silver car, got in, and sped off towards and out of the east

13   exit of the apartment complex.

14       45.    After the shooting began, Patrick Fox, who is Lamar Brown's uncle, ran

15   toward a black car, got in, started the car and sped off towards and out of the west exit

16   of the apartment complex.

17       46.    Patrick Fox is a repeat felon who, *inter alia*, traffics in illegal narcotics.

18       47.    Knight knew and had a working relationship with Patrick Fox before he

19   shot and killed Decedent.

20       48.    The shooting occurred at approximately 10:18 p.m. on November 1,

21   2016.

22       49.    Residents at the Marina Village West Apartments apartment complex

23   heard gunshots, dropped to the ground and took cover in their apartments.

24       50.    Once the shooting stopped, residents at 3525 W. Benjamin Holt Drive

25   began to gather outside.

26       51.    An independent witness ("Witness A") and a second independent

27   witness ("Witness B") rushed to Decedent's aid.

28

52.    Defendant Knight was talking on the phone and was not rendering aid to Decedent, who was alive.

53.    Defendant Knight failed to summon medical aid for Decedent urgently; paramedics did not arrive for approximately 15 minutes.

54.    Decedent was breathing and spoke prior to the arrival of the medical personnel; Decedent said "Oh my god, mom."

55.    Witness B held Decedent's wound to attempt to stop the bleeding until medical treatment finally arrived.

56.    Witness A comforted the Decedent until medical personnel came.

57.    When Witness B asked Defendant Knight to call the police and medical aid; defendant Knight stated that *he* was the police.

58.    Defendant Knight stated to someone he was speaking to on the telephone that he had shot at four individuals, that he hit two and that three got away.

59.    Defendant Knight did not provide medical aid to the Decedent.

60.    Defendant Knight failed to call for medical aid and delayed calling for medical aid for the Decedent and prevented Decedent from receiving medical care by asserting authority over the scene and procuring the false impression that he was acting to obtain medical care for Decedent.

61.    A gun allegedly found near Decedent was picked up by Defendant Knight, purporting to act within the course and scope of his employment, and placed under his arm.

62.    Official investigation uncovered an absence of gunshot residue on Decedent's person.

63.    Decedent's fingerprints were not found on any gun allegedly found near the location of the fatal shooting where he died.

64.    Decedent's fingerprints were not found on any gun.

65.    Official investigation determined that the gun purportedly found near the

scene of the shooting of the Decedent had not been fired that night.

66.   Police investigators gave the gun purportedly found near the scene of the shooting to the California Department of Justice for further investigation.

67.   Newspaper reports assert that according to the Stockton police, Decedent was shot at 10:40 p.m.

68.   At approximately 10:18 p.m., November 1, 2016, Plaintiff received a phone call from a cousin telling her that Decedent may have been shot 3525 W. Benjamin Holt Drive.

69.   Plaintiff Denise Bradley drove to 3525 W. Benjamin Holt Drive and arrived there at approximately 10:25 p.m., on November 1, 2016.

70.   Plaintiff Denise Bradley was not permitted to enter into the area where the shooting occurred even though she told a police officer that she thought the victim was her son.

71.   At or around 10:45 p.m., a security guard informed Plaintiff that there was a young man fighting for his life behind the police "Do Not Cross" line.

72.   Decedent's death certificate states time of death at 11:14 p.m.

73.   Before or close to midnight on November 1, 2016, with the on scene investigation underway, the San Joaquin County Sheriff's Department engaged a U-Haul truck, brought it to the apartment where Defendant Knight resided (which was behind the yellow "Police Do Not Cross" area) and proceeded to remove all of his belongings, permanently removing Defendant Knight from the apartment.

74.   Defendants Knight and Moore worked in concert to implement the Code of Silence, which Moore enforces as the Sheriff of San Joaquin County and which Knight follows, to distort the facts and come up with a false narrative in order to facilitate their cover-up of the events that culminated on November 1, 2016, with the unlawful killing of Decedent, including the falsification of the SJSO account of the incident (through Knight) and the timeline, the suppression and concealment of

and tampering with witnesses to the shooting, and the destruction, concealment and suppression of evidence pertaining to the shooting of Decedent.

75.     Defendant Knight knows the names and identities of the parties present during his fatal and unlawful shooting of Decedent, but he did not reveal that fact to the Stockton Police Department officers on scene on November 1, 2016, and has concealed that evidence from the OCIC investigators, resulting in the failure of any investigators to interview any of the participants in the fatal transaction in which Knight was a party.

76.     Details of this incident have been revealed to the authorized policy makers within the County, including defendant Moore, and the SJSO, and such policymakers have direct knowledge of the fact that defendant Knight, their subordinate, shot and killed the unarmed Decedent in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States of America and state law and that the Decedent was unlawfully denied immediate medical care by Knight as a result of Knight's misconduct. Despite this knowledge, the authorized policymakers within the County and its Sheriff's Department, including Moore, have approved of Knight's conduct and decisions in this matter and the basis for that conduct and those decisions, and have made a deliberate, conscious and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of Decedent, by imposing no discipline on Knight, deliberately deciding not to implement any corrective measures to prevent similar constitutional violations in the future, and by promoting Knight to Detective as an accolade for his shameless and cowardly killing of Decedent and in an effort to launder his violation of the constitutional rights of the Decedent by putting a positive "spin" on it. By so doing, the authorized policymakers within the County and its Sheriff's Department, including Moore, have shown affirmative agreement with the conduct of Knight and his agents, and have ratified the unconstitutional acts

of the individual Defendants, employees, and agents.

77.   [Reserved]

78.   As of April 12, 2018, the Officer Involved Critical Incident ("OCIC") investigation into the shooting and killing of Decedent still resides with the Stockton Police Department and will be forwarded to the County of San Joaquin District Attorney in the future.

79.   As a supervisor, Defendant Sheriff Moore permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under his supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of Keenan Bradley, Jr.

80.   Defendant Moore, the Sheriff-Coroner for the County of San Joaquin, by means of his control over the medical examiners for the county, is operating with an explicit conflict of interest in this and other cases where his subordinates have violated the rights of citizens through the use of excessive and deadly force, and is complicit in impeding the flow of information to the Plaintiffs and the public about the true nature of the events of November 1, 2016, which resulted in the death of a 21 year-old black male, who was no threat to anyone, including Knight, on the day he died.

81.   Defendant Moore continues to exert undue influence on the investigation of this case and on those who are engaged in the investigation of this case, including the shooting investigation, being conducted by the Stockton Police Department, which is not an independent agency, in an effort to conceal, cloud, falsify and obfuscate the truth and the evidence and to falsely exonerate Knight and himself as part of his ratification of the actions of Knight.

82.   Defendant Moore also ratified the acts and decisions of defendants Knight and Does and the bases for those acts and decisions by using his influence as the Sheriff-Coroner to (1) delay the autopsy and the release of the autopsy report;

(2) influencing the substance of the autopsy report; (3) delaying the OCIC investigation into the shooting and killing of Decedent; and (4) ignoring and suppressing the involvement of the other parties to the transaction with Defendant Knight, who were, according to Knight, engaged in a felony assault with a deadly weapon and assault on a peace officer, but who have not been pursued, arrested, or charged with any crime due, in part, to Defendant Moore's influence.

83.     Defendant Moore's motivation in taking the steps described in the preceding paragraph is to conceal the truth and to protect himself and the SJSO from liability and accountability.

84.     Defendants County and Moore have willfully withheld investigative reports and other information from the Plaintiff in an effort to prevent her from seeking justice and uncovering their wrongdoing.

85.     Defendant County along with its agents the SJSO and Moore permitted, condoned and ratified the unconstitutional actions of its deputies Defendants Knight and Does 1-10.

86.     Plaintiff Denise Bradley has lost support from Decedent, and both plaintiffs have lost their son's love, comfort and society, and have sustained emotional distress and other compensable losses, all in amounts in accordance with proof.

87.     Plaintiffs have incurred funeral, burial and other related expenses.

88.     Decedent sustained general damages, including pain and suffering, the loss of enjoyment of his life and the loss of his life, in an amount in accordance with proof.

89.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth here, Plaintiffs, as Co-successors in Interest of Decedent Keenan Bradley, Jr., sustained the following injuries and damages, past and future, including, but not limited to:

a.   Hospital and medical expenses incurred by Keenan Bradley, Jr.;

b.   Coroner's fees, funeral, and burial expenses;

c.   Keenan Bradley, Jr.'s loss of enjoyment of life;

d.   Keenan Bradley, Jr.'s loss of life, pursuant to federal civil rights law;

e.   Keenan Bradley, Jr.'s conscious pain and suffering, pursuant to the federal civil rights law; and

f.   All damages and penalties under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, and as otherwise allowed under California and United States statutes, codes, and common law.

90.   As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs, individually, sustained the following injuries and damages, past and future, including, but not limited to:

a.   The wrongful death of Decedent Keenan Bradley, Jr.;

b.   Loss of support and familial relationships, including loss of love, companionship, comfort, consortium, affection, society, services, solace, and moral support;

c.   Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

d.   Loss of enjoyment of life;

e.   Loss of economic support;

f.   All other legally cognizable special and general damages;

g.   Violations of state and federal constitutional rights; and,

h.   All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

91.   The individual defendants, who, at all relevant times acted under color

of state law, acted pursuant to a widespread or longstanding practice or custom of the County of San Joaquin and or the San Joaquin County Sheriff's Department.

92.     The conduct of the Defendants was willful, fraudulent, malicious, oppressive and in reckless disregard for the constitutional rights of the Decedent and Plaintiffs, justifying punitive damages against Defendants Moore, Knight and Does 1-20, in an amount in accordance with proof.

93.     "Deliberate indifference" means the conscious choice to disregard the consequences of one's acts or omissions, i.e., that the defendant knew her/its failure to implement adequate policies, failure to train adequately or acquiescence in certain longstanding customs or practices made it highly predictable that San Joaquin County employees would engage in conduct that would deprive persons such as the plaintiff of her rights but the defendant failed to take reasonable measures to address her/its acts or omissions and the risks of harm.

**CLAIM FOR RELIEF NO. 1**

<u>42 U.S.C. § 1983 – Amendments IV and XIV – Unreasonable Search and Seizure –
Unreasonable Seizure, Unlawful Arrest, Excessive and Deadly Force Resulting in
Death – Survival Action</u>

Against Defendants Knight and Moore and Does

94.     Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

95.     At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the Constitution of the United States of America to due process of law and the equal protection of the laws, and under Amendment IV to freedom from unreasonable search and seizure, were in force and effect and the individual defendants, Knight and Does, who subjected Decedent Keenan Bradley, Jr., to the deprivation of liberty and property and who seized, searched, arrested and

subjected Decedent to the use of unreasonable and excessive force on or about November 1, 2016, resulting in the death of the Decedent, and defendant, Moore, who acquiesced in the acts and omissions of Knight, knowing that such conduct would result in the deprivation, deprived the Decedent of his constitutional rights, including the rights to life, liberty and the pursuit of happiness, which violated the fourth and fourteenth amendments to the Constitution of the United States of America, which caused the injuries to Plaintiff.

96.    Defendant Knight seized Decedent Keenan Bradley, Jr., who was unarmed and posed no immediate threat or threat of any degree to him or anyone, by shooting him with a firearm, thus using excessive force against him and unlawfully seizing him and taking his life in violation of the Fourth Amendment.

97.    Defendant Sheriff Moore was a final policymaker who had final policymaking authority from the County of San Joaquin and who, as set forth above, ratified the acts and decisions of Knight and the bases for them and acquiesced in the constitutional deprivations described in this instrument.

98.    Defendant Moore knew or reasonably should have known that defendant Knight was engaged in sales on the black market and illicit and ultra vires dealings with police informants.

99.    Defendant Moore acquiesced in a deficient policy and deficiencies in policy covering dealings with informants and department members like Knight dealing in illicit activities, and the deficient policy and deficiencies in SJSO policy were the moving force behind the unlawful shooting and killing of Decedent by defendant Knight.

100.    Plaintiffs are the proper parties with standing pursuant to Cal. Civ. Proc. Code § 377.30 to pursue this claim pursuant to 42 U.S.C. § 1983.

101.    As a proximate result of the wrongful acts of the defendants the Decedent suffered from pain and suffering, emotional distress, fear, loss of enjoyment of life,

and loss of life.

102.   In doing the foregoing wrongful acts, Defendants Knight, and one or more Doe defendants, and each of them, acted maliciously, fraudulently, oppressively, and in reckless and callous disregard for the constitutional rights of the Decedent by unlawfully subjecting Decedent to deadly force, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

**CLAIM FOR RELIEF NO. 2**

<u>42 U.S.C. § 1983 – Amendments I, IV and XIV – Freedom of Association and Substantive Due Process – Deprivation of the rights of Plaintiffs to be free from Government Interference with a familial relationship with the Decedent</u>

Against Defendants Knight and Moore and Does

103.   Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

104.   Defendants, acting under color of law, deprived Plaintiffs of their right to a familial relationship with the Decedent without due process of law in violation of the Fourteenth Amendment and deprived Plaintiffs of their right to freedom of association with Decedent in violation of the First Amendment by unlawfully subjecting Decedent to deadly force resulting in his death, and delaying and preventing Decedent's receiving medical aid in the face of the dire and urgent need for emergent medical aid.

105.   The aforementioned acts amounted to the conscience shocking use of unreasonable, unjustified force and violence, all without provocation, which violated Decedent's Fourth and Fourteenth Amendment rights, causing injuries which resulted in Decedent's death.

106.   The acts of defendants Knight and Does shock the conscience because they manifest a deliberate indifference to the safety and life of Decedent.

107.   The acts of defendants Knight and Does shock the conscience because they were perpetrated with a purpose to harm the Decedent for reasons unrelated to legitimate law enforcement objectives, as they related to illicit and ultra vires dealings with government informants.

108.   As a proximate result of the foregoing wrongful acts of Defendants Moore, Knight and one or more of the Doe Defendants, and each of them, Plaintiffs sustained general damages, including grief, emotional distress and pain and suffering and loss of love, comfort and society, and special damages, including loss of support, in an amount in accordance with proof.

109.   In doing the foregoing wrongful acts, Defendants Moore, Deputy Knight and one or more of the Doe Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs and the Decedent. The aforementioned wrongful acts were willful, malicious and oppressive, thus warranting the award of punitive damages against each individual Defendant (but not the public entity Defendants, which are immune from punitive damages) in an amount adequate to punish the wrongdoers and deter future misconduct.

**CLAIM FOR RELIEF NO. 3**

<u>42 U.S.C. § 1983 –Municipal Liability -- Ratification</u>

Against All *Monell* Defendants

110.   Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

111.   Defendant Moore enjoyed final policymaking authority from the County of San Joaquin concerning the acts and omissions of defendant Knight.

112.   As set forth above Defendant Moore knew of and specifically made a deliberate choice to approve of the acts and omissions of defendants Knight and Does and to approve of the bases for those acts.

113.   Defendant Moore thus ratified the acts and omissions of defendants

Knight and Does.

## CLAIM FOR RELIEF NO. 4

<u>Cal. Civ. Code § 52.1 -- Violation of Civil Rights</u>

Against Defendants Knight, Does, County and SJSO

114.     Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

115.     By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described in this instrument, and with threats, intimidation, and/or coercion, violated the Plaintiffs' and Decedent's rights under California Civil Code § 52.1 and the following clearly established rights under the Constitution of the United States of America and California Constitution and law:

a.     The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America and the California Constitution, Article 1, Sections 7 and 13;

b.     The right to be free from excessive and unreasonable force and restraint in the course of search and seizure as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America;

c.     The right to be free from unlawful conscience-shocking force as secured by the Fourteenth Amendment;

d.     The right to be free from wrongful government interference with familial relationships and Plaintiffs' rights to the companionship, love, affection, society, and support of their son, the Decedent, as secured by the First, Fourth and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 *et seq.* and 377.20 *et seq.*;

e.   The right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and obtain happiness and privacy, as secured by California Constitution, Article 1, Section 1;

f.   The right to life, liberty, and property and not to be deprived of thereof without due process of law, as secured by the California Constitution, Article 1, Section 7;

g.   The right to be free from unlawful and unreasonable seizure of one's person, including the right to be free from unreasonable or excessive deadly force, as secured by the California Constitution, Article 1, Section 13;

h.   The right to protection from bodily restraint, harm or personal insult, as secured by California Civil Code Section 43;

i.   The right to medical care as required by California Government Code § 845.6; and

j.   The right one has to be free from the use of force with deliberate indifference to his life, as secured by the Fourteenth Amendment.

116.   Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff's and Decedent's rights, Defendants violated Plaintiff's and Decedent's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

a.   Defendant Knight's use of deadly force against Decedent Keenan Bradley, Jr., who was unarmed and who had his back to Defendant Knight and who posed no threat and no immediate threat to the safety of Defendant Knight or to any other person; and

b.   Defendant Knight's delay in summoning aid for Decedent Keenan Bradley, Jr.

117.   To the extent this claim is based on a violation of Decedent's rights, it

is asserted as a survival claim; to the extent that the violations of rights were done to Plaintiffs, it is asserted as a wrongful death claim and to the extent the violations were perpetrated against both Decedent and Plaintiffs, it is asserted as both a survival and a wrongful death claim.

118.   Defendants County of San Joaquin and SJSO are vicariously liable pursuant to Government Code § 815.2.

119.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this Cause of Action is entitled to relief as set forth above, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

120.   The defendants conspired to perpetrate the acts that they perpetrated in violation of the Bane Act and are liable additionally for such conspiracy.

### CLAIM FOR RELIEF NO. 5

<u>Violation of California Government Code Section 845.6</u>

Against Defendants Knight, Does, County and SJSO

121.   Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

122.   Defendant Knight and Does knew or had reason to know that Decedent was in need of immediate and higher level medical care, treatment, observation and monitoring, including being transferred for emergent inpatient hospitalization once Defendant had shot Decedent multiple times, and each failed to take reasonable action to summon and/or to provide him access to such medical care and treatment.

123.   Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendant County, knowing and/or

having reason to know this, failed to take reasonable action to summon and/or provide Decedent access to such care and treatment in violation of pursuant to Calif. Govt. Code § 845.6.

124.   As legal cause of the aforementioned acts of the Defendants, Plaintiffs were injured as set forth above, and their losses entitle them to all damages allowable under California law. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorney fees under California law as set forth herein.

**CLAIM FOR RELIEF NO. 6**

Assault & Battery

Against Defendants Knight, Does, County and SJSO

125.   Plaintiffs reallege the allegations contained in all paragraphs of this complaint and incorporates them as if fully set forth here.

126.   Defendant Knight and Does placed Decedent in immediate fear of death and severe bodily harm, and killed him by shooting him multiple times without just provocation or cause, subjecting Decedent to deadly force resulting in his death, constituting assault and battery.

127.   These defendants' conduct was neither privileged nor justified under statute or common law.

128.   As a direct and proximate result of the Defendants' assault and battery of the Decedent, Plaintiffs sustained injuries and damages and are entitled to relief as set forth above, and punitive damages against all Defendants in their individual capacities.

129.   These torts are actionable under the Government Tort Claims Act, specifically Calif. Govt. Code § 820, et seq., and Defendant County of San Joaquin and its subdivisions are vicariously liable for the acts of its officers pursuant to Calif.

Govt. Code § 815.2(a).

## CLAIM FOR RELIEF NO. 7

### Negligence – Wrongful Death

Against Defendants Knight, Does, County and SJSO

130.   Plaintiffs reallege the allegations contained in Paragraphs 1 through 111, hereinabove, and incorporates the same herein as though fully set forth.

131.   At all times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

132.   At all times, each Defendant owed Plaintiffs the duty to act with reasonable care.

133.   These general duties of reasonable care and due care owed to Plaintiffs by the Defendants include but are not limited to the following specific obligations:

a.   To provide, or cause to be provided, prompt and appropriate medical care for Decedent;

b.   To summon necessary and appropriate medical care for Decedent;

c.   To refrain from using excessive and/or unreasonable force against Decedent;

d.   To refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

e.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

f.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a bystander;

g.   To refrain from abusing their authority granted them by law;

h.   To refrain from violating Plaintiffs' rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law

134.   Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs in causing the death of Decedent and the injuries flowing therefrom.

135.   These torts are actionable under the Government Tort Claims Act, specifically Calif. Govt. Code § 820, et seq., and Defendant County of San Joaquin is vicariously liable for the acts of its officers pursuant to Calif. Govt. Code § 815.2(a).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

136.    As a direct and proximate cause of the aforementioned acts of defendants, and each of them, Decedent and Plaintiff were injured as set forth above, and are entitled to compensatory damages according to proof.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

1.    Compensatory and noneconomic damages in an amount according to proof, which is fair, just, and reasonable;

2.    Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the municipal Defendants;

3.    All other damages, penalties, costs, interest, and attorney's fees, as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., and 52.1, including a multiplier of attorney's fees, and as otherwise may be allowed by California and/or federal law; and,

For such other and further relief as the Court deems just and proper.

DATED: April  12 , 2018          Jeff Dominic Price, Esq.

                                 By _____/s/ Jeff Dominic Price_____
                                 Jeff Dominic Price, Esq.
                                 Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

DATED: April  12 , 2018          Respectfully submitted,

                                 Jeff Dominic Price, Esq.

                                 By _____/s/ Jeff Dominic Price_____
                                 Jeff Dominic Price, Esq.
                                 Attorney for Plaintiffs

---

25 – SECOND AMENDED COMPLAINT AGAINST COUNTY OF SAN JOAQUIN ET AL.