UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENISE L. BRADLEY, et al.,

        Plaintiffs,

     v.

COUNTY OF SAN JOAQUIN, et al.,

        Defendants.

No. 2:17-cv-2313-KJM-AC

ORDER

On May 7, 2018, defendants filed this motion to dismiss portions of the Bradley's second amended complaint ("SAC") on several grounds. For the reasons set forth below, the court GRANTS the motion in part and DENIES in part.

I.    BACKGROUND

    A.    Factual Background

On November 1, 2016, decedent Keenan Bradley, Jr. was present at the apartment complex located at 3525 W. Benjamin Holt Drive in Stockton, California. SAC ¶ 18, ECF No. 26-1. Keenan was in the process of leaving the apartment complex between 9:30 and 10:18 p.m. *Id.* ¶ 26. Defendant Michael Knight is a deputy sheriff for San Joaquin County. *Id.* ¶¶ ix, 29. On and before November 1, 2016, Knight resided in an apartment in the complex at 3525 W. Benjamin Holt Drive. *Id.* ¶¶ 27-28. While Keenan was leaving the complex, Knight was engaged in an illicit transaction in the parking lot. *Id.* ¶¶ ix, 28. Keenan was a bystander to some

1

part of this transaction. *Id.* ¶ 43. During Knight's illicit transaction, Knight drew a concealed handgun and declared his status as law enforcement before issuing a command. *Id.* ¶¶ 30-31. Knight commanded individuals to "get down." *Id.* ¶ 30. Knight then fired the handgun at individuals in the parking area, striking and fatally wounding Keenan. *Id.* ¶¶ 37, 39, 41, 58.

Two witnesses attempted to render aid to Keenan. *Id.* ¶¶ 51, 55-56. Knight then asserted authority over the area by purporting to act in his law enforcement capacity and secure the scene, preventing the witnesses' continuation of care to Keenan. *Id.* ¶ 60. Knight did not attempt to render medical care to Keenan himself. *Id.* ¶ 59. Knight made at least one phone call to someone, not identified in the complaint, stating "that he had shot at four individuals, that he hit two and that three got away." *Id.* ¶ 58. An ambulance arrived approximately fifteen minutes after the shooting. *Id.* ¶ 53. By 10:45 p.m., a police "Do Not Cross" line existed, and plaintiff Denise Bradley, Keenan's mother, was not permitted to enter the area. *Id.* ¶¶ 70-71. According to the death certificate, Keenan died at 11:14 p.m. *Id.* ¶ 72.

At or about 12:00 a.m., the San Joaquin County Sheriff's Department "engaged a U-Haul truck, brought it to" Knight's apartment behind the "Police Do Not Cross" area, and removed "all of his belongings, permanently removing [Knight] from the apartment." *Id.* ¶ 73.

Defendant Steve Moore is the Sheriff-Coroner for San Joaquin County. *Id.* ¶ viii. Moore "worked in concert" with Knight "to distort facts and come up with a false narrative" to "facilitate their cover-up of the events that culminated . . . with the unlawful killing of [Kennan], including falsification of the . . . account of the incident (through Knight) and the timeline," witness tampering and evidence tampering. *Id.* ¶ 74. The investigation into the incident is ongoing. *Id.* ¶¶ 78, 82.

Before the shooting, Keenan had no problems with law enforcement. *Id.* ¶ 1. He was not the target of any pending investigation, and there was no warrant or probable cause for his arrest. *Id.* Keenan did not possess a firearm. *Id.* ¶ 14. Keenan was not a member or affiliate of a criminal gang. *Id.* ¶ 15. On the night of the incident, Keenan was at the complex and was visiting friends who lived in the complex at 3525 W. Benjamin Holt Drive. *Id.* ¶¶ 18-19, 24. At the time of the incident, Keenan was leaving the complex to take his cousin to work, as he did

routinely. *Id.* ¶¶ 20-23. Knight allegedly found a firearm near Keenan, picked up the firearm and "placed [it] under [Knight's] arm." *Id.* ¶ 61. But an official investigation revealed "an absence of gunshot residue on [Keenan's] person," and Keenan's fingerprints "were not found on any [firearm] allegedly found near the location of the fatal shooting where [Keenan] died." *Id.* ¶¶ 62-63.

### B.    Procedural Background

Plaintiff Denise Bradley filed the initial complaint on November 3, 2017, both individually and as the personal representative of Keenan. ECF No. 1. Defendants previously filed two motions to dismiss plaintiffs' initial and first amended complaints. *See* ECF Nos. 1, 16, 12, 21. Following the filing of the first motion, the parties stipulated to plaintiffs' filing an amended complaint, and the court denied the motion as moot amended filings. *See* ECF Nos. 15-17. Following the filing of the second motion, plaintiffs requested leave to file a second amended complaint; the court denied the second motion to dismiss as moot in light of plaintiffs' second amended complaint. ECF Nos. 21, 22-24, 26, 35. Plaintiffs later filed a corrected second amended complaint, the operative complaint, on April 24, 2018. ECF No. 26-1.

Defendants move to dismiss portions of the operative second amended complaint. Mot., ECF No. 31. Plaintiffs oppose (Opp'n ECF No. 36), and defendants have replied, Reply, ECF No. 37. The court resolves this motion below.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic

recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In the analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in a light most favorable to the plaintiff. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Plaintiffs need not satisfy a heightened pleading standard when seeking damages for violations of constitutional rights under § 1983. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability")). A plaintiff need only plead facts sufficient to show that their claim has substantive plausibility. *Id.*

B.     Leave to Amend

The court should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has a policy of favoring amendments. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [to grant or deny leave to amend,] 'a court must be guided by the underlying purpose of Rule 15—to facilitate [a] decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). But "the liberality in granting leave to amend is subject to several limitations. Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso, US ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks and citation omitted). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" *Id.* (citations omitted).

III.    ANALYSIS

A.     Color of State Law and Scope of Employment

Defendants contend plaintiffs have not sufficiently alleged that Knight acted under color of state law to state a claim under § 1983. Mot. at 7-8. Defendants further assert Knight was not acting in the scope of his employment, as required by plaintiffs' state law claims. *Id.* at 16. In opposition, plaintiffs cite the relevant allegations of the second amended complaint to

4

rebut defendants' contentions. Opp'n at 15-16, 21-22. For the reasons below, the court finds that plaintiffs have sufficiently pleaded Knight's conduct was under color of state law and that he was acting within the scope of his employment.

### 1. Color of State Law (Federal Claims)

There is no "rigid formula" for determining whether a state or local law official is acting under color of state law, a required element of a § 1983 claim. *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (citing *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)). "State employment is generally sufficient to render the defendant a state actor." *Id.* (citing *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal quotations and alterations omitted)). Whether an "officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)). "Misuse of power, possessed by virtue of state law and possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color' of state law." *Id.* (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.* (citing *Atkins*, 487 U.S. at 49-50).

The Ninth Circuit requires at least three criteria be satisfied to determine an individual was acting under color of state law. *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). First, the defendant's acts must have been "performed while the officer [was] acting, purporting, or pretending to act in the performance of his or her official duties." *Id.* Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996) (finding no color of state law because, under both accounts of events, victim opened door before victim recognized officer in plain clothes, and officer did not purport to act as a policeman). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Anderson*, 451 F.3d at 1069 (citing *Martinez*, 54 F.3d at 987).

5

Here, plaintiffs allege Knight "announced his status as a Deputy Sheriff and yelled 'get down, get down'" as he drew his firearm, then fired several shots. SAC ¶¶ 30-31. From the time Knight invoked his law enforcement status going forward, Knight was purporting to act in performance of his official duties. *See id.* ¶ 60 (alleging Knight "prevented [Keenan] from receiving medical care by asserting authority over the scene and procuring the false impression that he was acting to obtain medical care for [Keenan]"); *id.* ¶ 61 (alleging Knight picked up a firearm "allegedly found near [Keenan]" as Knight "purport[ed] to act within the course and scope of his employment"). When a witness asked Knight to call the police and medical assistance, "Knight stated that *he* was the police." *Id.* ¶ 57 (emphasis in original).

Plaintiffs also have alleged that Knight's assertion of his law enforcement status had the purpose and effect of influencing the behavior of others. *See id.* ¶¶ 30, 41-42, 44-45 (Knight announcing his law enforcement status, shouting "get down, get down," Keenan walking away from Knight's area before being fatally wounded, and other individuals running away from area after shooting began); *see also id.* ¶¶ 57, 60 (Knight informing witness he "was the police" when witness asked Knight to call police and medical aid; Knight "prevented [Keenan] from receiving medical care by asserting authority over the scene and procuring the false impression that he was acting to obtain medical care for [Keenan]"); *id.* ¶ 92 (alleging "[t]he conduct of the [d]efendants was willful, fraudulent, malicious, oppressive and in reckless disregard [of] the constitutional rights of [Keenan] and plaintiffs . . . ."). Knight's repeated invocation of his law enforcement status facilitated his conduct because it permitted him to retain control of the scene before and after the arrival of other law enforcement. *See id.* ¶¶ 60, 73-75.

Knight's conduct as alleged was related to his status and performance of duties as a law enforcement officer. Among his other statements in connection with the night Keenan was killed, Knight has asserted "he was the victim of an assault immediately before he shot and killed [Keenan]." SAC ¶ ix. Plaintiffs' allegations of Knight's invoking his law enforcement status, drawing his firearm and directing others to get down, all construed as required in favor of plaintiffs, indicate Knight conveyed the impression he sought to detain or arrest someone as

permitted by the California Penal Code, including sections 833.5[1] and 836(a).[2] *See also* Cal. Penal Code § 835a ("Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.").  Additionally, Knight's invocation of his law enforcement status after the shooting was related to Knight's duties as a law enforcement officer to control and investigate a crime scene.  *See* SAC ¶¶ 60-61, 73-75.

Defendants seek to distinguish the case of *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1141 (9th Cir. 2012), on which plaintiffs rely.  *See* Opp'n at 15; Reply at 2-3. Although *Tsao* is factually distinct because that case involved the actions of a private casino's security guard, the security guard's behavior in "purport[ing] to act on behalf of the state from the outset of the encounter," is similar to Knight's identifying himself as a police officer here before the shooting and then later throughout the incident.  *See* SAC ¶¶ 30-31, 57, 60; *see also Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir. 1980) (finding off-duty officer working as "security teller" who "flashed his police identification at [plaintiff], . . . and introduced himself as a police officer

---

[1] California Penal Code section 833.5(a), in pertinent part, permits a peace officer to detain someone if the officer "has reasonable cause to believe that a person has a firearm or other deadly weapon with him or her in violation of any provision of law relating to firearms or deadly weapons."

[2] Section 836(a) reads as follows:

> (a) A peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur:
>
> (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence.
>
> (2) The person arrested has committed a felony, although not in the officer's presence.
>
> (3) The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed.

1  before instructing [plaintiff] to sit down on the platform" were "indicia of state action" that

2  "compel the conclusion that [off-duty officer] was acting" under color of state law).

3         Plaintiffs' allegations in the second amended complaint also are similar to the facts

4  in *Anderson*, 451 F.3d at 1065-69. There, an off-duty correctional officer who was out of

5  uniform was involved in a car accident with another automobile and subsequently assaulted the

6  driver of the other automobile. *Id.* at 1065-67. After the assault, the officer kept bystanders from

7  assisting the other driver by invoking his status as a "cop," directing others to "stay back," and by

8  claiming he was engaged in "police business." *Id.* at 1065-66. The Ninth Circuit held the officer

9  acted under color of law when assaulting the other driver because "he invoked his law

10 enforcement status to keep bystanders from interfering with his assault on [the victim]." *Id.* at

11 1068. The Ninth Circuit found the first two criteria for acting under color of law were satisfied

12 because the officer stated he was in law enforcement and caused bystanders not to interfere after

13 he had assaulted the other driver. *Id.* at 1069. The Ninth Circuit also found the harm inflicted on

14 the other driver had a "sufficiently close relationship to the officer's governmental status or to the

15 performance of his duties" because the officer "invoked his [governmental] status" to "influence

16 the behavior of those around him." *Id.* (internal quotation marks and citation removed). These

17 facts are similar to plaintiffs' allegations here, that Knight invoked his law enforcement status to

18 yell at others to "get down" before shooting and again invoked his law enforcement status when

19 asked to contact police and medical aid, "asserting authority over the scene." SAC ¶¶ 30-31, 57,

20 60.

21         Defendants also challenge the second amended complaint's allegation that

22 Knight's possession of a concealed handgun was based solely on his status as a law enforcement

23 official. *See* SAC ¶ 30 ("Knight drew a concealed handgun, which he was only permitted to do

24 [under] [California] Penal Code § 25450 . . . .").[3] But the court must accept plausible factual

25 _____

26         [3] California Penal Code § 25400 addresses penalties for carrying a concealed firearm.
   Section 25450 provides exclusions for peace officers from application of § 25400:

27
           As provided in this article, Section 25400 does not apply to, or affect,
28         any of the following:

                                        8

allegations as true, and defendants do not demonstrate that plaintiffs' allegations are implausible, stating only that "California law allows many other individuals, in addition to peace officers, to carry concealed weapons." Reply at 2 (citing Cal. Pen. Code § 25505, *et seq.*; *id.* § 25600, *et seq.*). Defendants do not contend any other statutory provisions apply to Knight, however. Plaintiffs' allegation regarding Knight's concealed carry status further supports their pleading that Knight acted under color of state law.

In sum, plaintiffs have sufficiently alleged Knight was acting under color of state law.

### 2. Scope of Employment (State Law Claims)

To determine scope of employment under California law, the determinative factor is whether a party committed an allegedly offending act in the course of carrying out the employer's business. *Smithen v. United States*, No. CV 09-414-GW(PJWx), 2016 WL 9051797, at *5 (C.D. Cal. Feb. 25, 2016) (citing *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992). "[A]n employer is vicariously liable for his employee's torts committed within the scope of the employment." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986). Courts may find vicarious liability for unauthorized or prohibited conduct if the risk of that

---

(a) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired.

(b) Any other duly appointed peace officer.

(c) Any honorably retired peace officer listed in subdivision (c) of Section 830.5.

(d) Any other honorably retired peace officer who during the course and scope of his or her appointment as a peace officer was authorized to, and did, carry a firearm.

(e) Any full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

(f) Any person summoned by any of these officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer.

Cal. Penal Code § 25450.

9

conduct is one "typical of or broadly incidental to the enterprise undertaken by the employer." *Id.*
at 968 (citing *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 619 (1975)) (internal
quotation marks omitted).  Essentially, the employer's liability extends beyond its actual or
possible control of the employee to include risks inherent in or created by the enterprise.  *Id.*  An
employer is not vicariously liable where the employee has substantially deviated from his duties
for personal purposes.  *Id.* (citing *Hinman v. Westinghouse Elec. Co.*, 2 Cal. 3d 956, 960 (1970)).
Whether an employee has acted within the scope of his employment is ordinarily a question of
fact reserved for the jury; it becomes a question of law only where "the facts are undisputed and
no conflicting inferences are possible."  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.
4th 291, 299 (1995) (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991)).

        Here, plaintiffs successfully allege that Knight acted within the scope of his
employment once he invoked his status as a law enforcement officer, issued commands, shot
Keenan and relied on his law enforcement status to take control of the scene after discharging his
weapon seven times.  SAC ¶¶ 30-31, 39, 57, 60.  Additionally, plaintiffs allege Moore and other
San Joaquin County Sheriff's personnel responding to the scene coordinated with Knight in the
aftermath of the incident, further supporting an inference that Knight's conduct was within the
scope of his employment.  SAC ¶¶ 73-74.  Plaintiffs have sufficiently alleged Knight was acting
within the scope of his employment from the moment he invoked his law enforcement status
going forward in time.

        Plaintiffs rely on *Inouye v. County of Los Angeles*, 30 Cal. App. 4th 278 (1994), to
support their position that an off-duty officer can act within the scope of his employment under
California law.  In that case, a police officer finished his shift, returned his County-issued firearm
to a weapons locker under County policy, removed a personally-owned firearm from the weapons
locker and placed it in a holster on his belt.  *Id.* at 280.  The officer then left work in his pickup
truck.  *Id.*  Plaintiff encountered the officer's truck on a highway, attempted to ram the truck from
behind and run it off the road, then pulled in front of the officer and stopped abruptly.  *Id.*
Plaintiff then walked to the officer's truck and started yelling through the officer's driver's side
window.  *Id.*  The officer decided to arrest plaintiff "to determine whether he was under the

influence of alcohol or drugs," identified himself as a police officer and told plaintiff to freeze. *Id.* Plaintiff smashed the window. *Id.* The officer drew his firearm, identified himself again as a police officer and told plaintiff to freeze; plaintiff made a motion as if reaching for a weapon, and the officer shot plaintiff multiple times. *Id.* The California Court of Appeal found the officer "was indisputably acting in the scope of his employment . . . at the time [plaintiff] was shot," and plaintiff was "entitled to proceed against the County under the doctrine of respondeat superior." *Id.* at 284-85.

In certain ways Knight acted similarly to the officer in *Inouye:* he identified himself as a police officer, drew his firearm and issued commands. *Compare* SAC ¶ 30 (yelling "get down, get down"), *with Inouye*, 30 Cal. App. 4th at 280 (telling plaintiff to "freeze"). Defendants attempt to distinguish *Inouye* from the allegations here, contending plaintiffs only "allege [Knight] was engaging in an illegal transaction," not a use of force after a decision to arrest. Mot. at 8 n.5; *see* Reply at 7-8. Construing the factual allegations and all reasonable inferences in favor of plaintiffs, the court finds Knight's drawing of a concealed firearm, identifying himself as an officer and commanding others to "get down" signaled Knight sought to detain or arrest someone before he fired his firearm. *See* SAC ¶¶ 30-31.

Plaintiffs have sufficiently pleaded Knight was acting within the scope of his employment for the purposes of his state law claims against the County of San Joaquin.

    B.    Seizure: Fourth Amendment

Defendants primarily argue that plaintiffs identify Keenan as a bystander only, and thus invalidate their seizure claim under the Fourth Amendment. Mot. at 9-10. Plaintiffs assert defendants misread the second amended complaint, in which plaintiffs have pleaded that Knight intentionally shot and killed Keenan, Keenan was merely a bystander to the events before the shooting and plaintiffs may plead in the alternative. Opp'n at 16-17. For the reasons below, the court finds the plaintiffs have sufficiently pleaded the intentional seizure of Keenan to state a Fourth Amendment claim.

"[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v.*

*Garner*, 471 U.S. 1, 7 (1985).  "It has long been clear that '[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead.'"  *A.K.H. by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) (citing *Garner*, 490 U.S. at 11).  But an innocent bystander not subject to intentionally applied force cannot state an excessive force claim.  *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (reasoning that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.").

Here, plaintiffs plead that Knight shot at Keenan: Knight drew a concealed firearm and yelled to "get down, get down."  SAC ¶ 30.  "After announcing his presence and status as a Deputy Sheriff, [Knight] fired, shooting [Keenan][] in the back, killing him."  *Id.* ¶ 31.  And "Knight stated to someone he was speaking to on the telephone that he shot at four individuals, that he hit two and that three got away."  *Id.* ¶ 58.  Plaintiffs further allege defendants' conduct "was willful, fraudulent, malicious, oppressive and in reckless disregard for the constitutional rights of [Keenan] and [p]laintiffs . . . ."  *Id.* ¶ 92.  Drawing all reasonable inferences in favor of plaintiffs, the court finds plaintiffs have pleaded Knight intentionally shot at Keenan—the only one of four individuals Knight "shot at" who did not get away.  *See id.*

Defendants' incomplete citation to one paragraph of the complaint to assert plaintiffs only allege Keenan was a bystander omits the additional allegation that Keenan was a bystander "to the events that led to [Knight] discharging his weapon," and does not rebut plaintiffs' other allegations in the complaint.  *See* Reply at 4 (referencing SAC ¶ 43).  Taken together and read fairly, plaintiffs' allegations are that the Keenan was a bystander to Knight's "sales of merchandise on the black market," but Knight intentionally shot at Keenan.  *See* SAC ¶¶ 28, 31, 58.

Paragraph 58 of the second amended complaint also distinguishes this case from cases defendants rely on, including *Kong Meng Xiong v. City of Merced*, No. 1:13-CV-00083-

12

SKO, 2015 WL 4598861, at *10-12 (E.D. Cal. July 29, 2015). In *Xiong*, the court found "no evidence the officers fired upon [the intended target] to seize any group that [the bystander plaintiff] was with, and there [was] no evidence the officers intended to seize anyone except [the intended target]." *Id.* at *11. The court noted a plaintiff's assertion that officers "observed a group of people on the other side of the fence [from the intended target], [but] the [assertion was] a mischaracterization of the officers' testimony." *Id.* Here, the complaint alleges Knight "stated . . . he had shot at four individuals, that he hit two and that three got away." SAC ¶ 58. In this way, this case is distinguishable from *Xiong* and closer to the Ninth Circuit's opinion in *Nelson v. City of Davis*, 685 F.3d 867, 876-77 (9th Cir. 2012), in which the Circuit observed officers "intentionally fired" shots from pepper spray launchers "in the direction of" a group of students. In *Nelson*, the Circuit rejected officers' argument that plaintiff "was not individually targeted by officers," reasoning that argument "misapprehends the distinction between intentional and unintentional conduct that the Supreme Court has repeatedly held as determinative of the Fourth Amendment analysis." *Id.* at 876. Thus, even if Knight only intentionally shot at the group of four individuals, *see* SAC ¶ 58, plaintiffs state an excessive force claim.

Defendants rely on multiple other cases that also do not persuade the court plaintiffs have failed to state a Fourth Amendment excessive force claim. For instance, defendants cite to *Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1260 (E.D. Wash. 2005), in which plaintiffs on the second floor of a two-story building exposed to pepper spray from officers' intentionally deploying the spray on the first floor were not "the deliberate and intended object of the [officers'] use of [pepper spray]" and therefore not "seized" under the Fourth Amendment. And in *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 943, 945-48 (E.D. Cal. 2011), the court found no seizure under the Fourth Amendment where an officer "voluntarily drew his side arm, aimed at what he thought was [the intended target], and volitionally pulled the trigger," hitting both the intended target with one shot and plaintiff with one shot. In *Rodriguez*, the court observed plaintiff did not allege any facts "that significantly differentiate this case from other cases involving an innocent bystander struck by police fire that is targeted at a third

person." *Id.* at 948. These cases are distinct from the allegations here, where plaintiffs plead that Knight intentionally shot at four individuals, including Keenan. *See* SAC ¶ 58.

Plaintiffs direct the court's attention to their pleading that Knight's conduct, along with other defendants, was "willful." *See id.* ¶ 92. Although that allegation alone is conclusory, the paragraph further bolsters the conclusion plaintiffs have plead Knight intentionally shot at Keenan. *See Screws v. United States*, 325 U.S. 91, 101 (1945) (reasoning "the word [willful] denotes an act which is intentional rather than accidental").

Plaintiffs' allegations that Knight shot recklessly at the four or five individuals nearest him in the complex parking lot do not justify dismissing plaintiffs' Fourth Amendment excessive force claim at this stage because plaintiffs remain free to plead alternative theories of liability. *See Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1114 (9th Cir. 2006) ("It is commonplace under liberal pleading rules for complaints to assert alternative theories of liability."); *see* SAC ¶ 37 (alleging Knight "fired the firearm recklessly").

C.      Municipal Liability

Defendants contend plaintiffs fail to state a municipal liability claim in part because plaintiffs "have not alleged facts" supporting the causation element, and have failed "to allege a County policy or custom caused their harm" or that a final policymaker's ratification caused plaintiffs' injury. Mot. at 13-17. In opposition, plaintiffs contend defendant Moore, "who held final policymaking authority from the County ratified [Knight's] actions and . . . Knight's actions resulted from his acting [under] an expressly adopted official County policy or a widespread or longstanding practice or custom of the County." Opp'n at 19-21; SAC ¶¶ viii, 76, 91, 93, 97, 99, 111-13. For the reasons below, the court DENIES dismissal as to the municipal liability claim, while granting plaintiffs leave to amend their municipal liability allegations to plead any insufficiently pleaded theories, as explained below.

Section 1983 imposes liability on "persons" who, under color of law, deprive others of a constitutional right. 42 U.S.C. § 1983. Courts may hold municipalities liable as "persons" under § 1983, but not for the unconstitutional acts of their employees based solely on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-95

14

(1978).  Rather, a plaintiff seeking to impose liability on a municipality under § 1983 is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

A *Monell* claim may be stated by relying on three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).  Plaintiffs have alleged claims under all three theories.  *See* SAC ¶¶ viii, 76, 79-82, 91, 93, 97, 99, 111-13.  As explained below, plaintiffs have sufficiently alleged a claim under the third ratification theory of liability.

### 1. Policy or Custom

To state a claim under *Monell* for an unconstitutional policy or custom, a party must identify the challenged policy or custom, explain how it was deficient, explain how it caused the plaintiff harm, and reflect how it "amounted to deliberate indifference, i.e.[,] explain[] how the deficiency involved was obvious and the constitutional injury was likely to occur."  *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (examining *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001)); *see Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal where plaintiff failed to allege "any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the [defendant city] or that the custom or practice was the 'moving force' behind his constitutional deprivation").  In other words, a plaintiff must plead (1) that the plaintiff "possessed a constitutional right of which

15

[he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted).

Here, the complaint puts forth mostly conclusory allegations of a "deficient policy and deficiencies in policy covering dealings with informants and department members like Knight dealing in illicit activities . . . ." SAC ¶ 99. Similarly, plaintiffs contend the individual defendants acted under "a widespread or longstanding practice or custom of the County of San Joaquin and or the San Joaquin County Sheriff's Department." *Id.* ¶ 91. Plaintiffs also contend "the defendant knew her/its failure to implement adequate policies . . . made it highly predictable that San Joaquin County employees would engage in" unconstitutional conduct. *Id.* ¶ 93.

Plaintiffs do allege a "Code of Silence" that Moore "enforces as the Sheriff" and "Knight follows, to distort the facts and come up with a false narrative," to "facilitate their cover-up of the events that culminated" in "the unlawful killing of [Keenan]," including the falsification of the [San Joaquin Sheriff Office's] account of the incident . . . the timeline, the suppression and concealment of and tampering with witnesses to the shooting, and the destruction, concealment and suppression of evidence pertaining to the shooting of [Keenan]." *Id.* ¶ 74.

But plaintiffs do not state how this "Code of Silence" amounted to deliberate indifference or how that policy was "the moving force" behind the constitutional violation here. *Plumeau*, 130 F.3d at 438; *compare Cunningham v. Gates*, 229 F.3d 1271, 1280 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (observing plaintiffs' contention that "policies allow police officers to escape accountability for their unconstitutional acts of excessive force" and that relevant "officers knowingly rely on [those] policies and practices when committing unlawful acts of excessive force"), *with* SAC ¶ 99 (alleging "the deficient policy and deficiencies in [San Joaquin Sheriff's Office] policy were the moving force behind the unlawful shooting and killing of [Keenan]").

Without "sufficient factual matter" to make the claim at least plausible, *Iqbal*, 556 U.S. at 678, plaintiffs have failed to state a municipal liability claim based on an official policy or

custom.  Plaintiffs' other allegations outlined above are no more than recitations of the elements of a claim and give no notice of plaintiffs' theory of liability here.  *See, e.g.*, *Mello v. Cty. of Sacramento*, No. 2:14-CV-02618-KJM, 2015 WL 1039128, at *3 (E.D. Cal. Mar. 10, 2015) (observing "the complaint does no more than recite one or another signal phrases"; granting motion to dismiss with leave to amend).

### 2.  Omissions or Failures to Act

A municipality's failure to train its employees may amount to a policy of deliberate indifference. *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008). To state a claim for failure to train, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks the particular [employees] must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom [employees] come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." *Merritt v. Cty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60-62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train").

According to plaintiffs, Moore as a supervisor "permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under his supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of" Keenan.  SAC ¶ 79.  Additionally, plaintiffs allege "failure to train adequately or acquiescence in certain longstanding customs or practices made it highly predictable that San Joaquin County employees would engage in conduct that would deprive persons such as the plaintiffs of their rights, but the defendant failed to take reasonable measures to address her/its acts or omissions and the risks of harm." *Id.* ¶ 93.  Moore also allegedly "acquiesced in the acts and omissions of Knight, knowing that such conduct would result in" deprivation of plaintiffs' constitutional rights. *Id.* ¶ 95.  Again, none of these allegations alleges sufficient facts about the existing training San Joaquin Sheriff's Department deputies undergo, much less facts about how this training was inadequate or how the inadequate training caused the deprivation of plaintiffs' constitutional

17

1 rights. Nor have plaintiffs alleged "sufficient factual matter" as to any pattern of similar

2 constitutional violations within the San Joaquin Sheriff's Department. *Iqbal*, 556 U.S. at 678.

3                              3.    Ratification

4              A plaintiff may claim *Monell* liability where an "official with final policy-making

5 authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*

6 *v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). "A policymaker's knowledge of an

7 unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231,

8 1239 (9th Cir. 1999). Furthermore, "a policymaker's mere refusal to overrule a subordinate's

9 completed act does not constitute approval." *Id.* Rather, ratification requires the authorized

10 policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Ratification

11 "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-

12 event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*,

13 No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (emphasis in

14 original) (discussing *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)). After proving

15 ratification occurred, a plaintiff must also show that the ratification was (1) the cause in fact, and

16 (2) the proximate cause of the constitutional deprivation. *Arnold v. Int'l Bus. Machines Corp.*,

17 637 F.2d 1350, 1355 (9th Cir. 1981).

18              Plaintiffs have alleged Moore was a final policymaker. *See* SAC ¶¶ viii, 97, 111.

19 Additionally, plaintiffs have sufficiently alleged more than a mere failure to discipline Knight.

20 True, plaintiffs have repeatedly recited the element that an "official with final policy-making

21 authority ratified a subordinate's unconstitutional decision or action and the basis for it."

22 *Compare Gillette*, 979 F.2d at 1346-47, *with* SAC ¶¶ 76, 97, 111-13. They also allege a failure to

23 impose discipline on Knight. *See* SAC ¶ 76. But plaintiffs have alleged more than this failure to

24 impose discipline; plaintiffs have alleged Moore, as "the Sheriff-Coroner, by means of his control

25 over the medical examiners for the county, . . . is complicit in impeding the flow of information

26 to" plaintiffs "and the public about the true nature of the events . . . ." *Id.* ¶ 80. Plaintiffs have

27 alleged Moore, by "exert[ing] undue influence on the investigation of this case and on those who

28 are engaged in the investigation of this case," has done so "in an effort to conceal, cloud, falsify

and obfuscate the truth and the evidence to falsely exonerate Knight and himself as part of his ratification of the actions of Knight." *Id.* ¶ 81.  Specifically, plaintiffs allege Moore "ratified the acts and decisions of defendant Knight and the bases for those acts and decisions by using his influence as the Sheriff-Coroner to":

> (1) delay the autopsy and the release of the autopsy report;
>
> (2) influence the substance of the autopsy report;
>
> (3) delay the OCIC investigation into the shooting and killing of [Keenan]; and
>
> (4) ignore and suppress the involvement of the other parties to the transaction with Defendant Knight, who were, according to Knight, engaged in a felony assault with a deadly weapon and assault on a peace officer, but who have not been pursued, arrested, or charged with any crime due, in part, to Defendant Moore's influence.

*Id.* ¶ 82 (modification in brackets).

Plaintiffs allege these actions, including withholding "investigative reports and other information from [plaintiffs]" is motivated "to conceal the truth and to protect [Moore] and the [San Joaquin Sheriff's Office] from liability and accountability." *Id.* ¶¶ 83-84.  The court finds these allegations sufficiently pleaded.  *See, e.g.*, *Malott v. Placer Cty.*, No. 2:14–CV–1040 KJM EFB, 2014 WL 6469125, at *9 (E.D. Cal. Nov. 17, 2014) (finding sufficient plaintiff's allegation that the Sheriff "rejected his complaint . . . without looking at the proffered medical records and photographs"); *Dorger*, 2012 WL 3791447, at *5–6 (ratification pleaded by allegations that city delayed investigation and disregarded evidence contradicting officer testimony).  Plaintiffs' allegations reflect conscious, affirmative choices by Moore that show Moore ratified Knight's actions and knew Knight's actions risked liability to Moore and the San Joaquin County Sheriff's Department.  Plaintiffs have pleaded Moore's "ratification conduct, and thus the existence of a *de facto* policy or custom" to cover up or affect investigations of officers' improper conduct is evidence of Moore's "post-event conduct, including [his] conduct in an investigation of the incident."  *Dorger*, 2012 WL 3791447, at *5 (emphasis in original).

Plaintiffs also sufficiently plead causation.  Setting aside plaintiffs' conclusory allegations, *see* SAC ¶ vii, 76, 97, 111-13, plaintiffs allege Moore "permitted and failed to

1  prevent the unconstitutional acts of other [d]efendants and individuals under his supervision and

2  control . . . with deliberate indifference to the rights of [Keenan]," defining "deliberate

3  indifference" in part as "the conscious choice to disregard the consequences of one's acts or

4  omissions, i.e., that the defendant knew [his] failure to implement adequate policies . . . or

5  acquiescence in certain longstanding customs or practices made it highly predictable that San

6  Joaquin County employees would engage in" unconstitutional conduct. *Id.* ¶¶ 79, 93. These

7  allegations surpass allegations of a "single failure to discipline," a "one-time refusal to discipline"

8  or "a supervisor's isolated and subsequent ratification of an officer's conduct" that courts have

9  rejected as insufficient to plead ratification. *See, e.g.*, *Haugen v. Brosseau*, 351 F.3d 372, 393

10  (9th Cir. 2003) ("[S]ome municipal pronouncements ratifying a subordinate's action could be

11  tantamount to the announcement or confirmation of a policy for purposes of *Monell* . . . ."), *rev'd*

12  *on other grounds*, 543 U.S. 194 (2004); *Xiong*, 2015 WL 4598861, at *30; *Jones v. Cty. of*

13  *Sacramento*, No. Civ. 2:09-1025 WBS DAD, 2010 WL 2843409, at *7 (E.D. Cal. July 20, 2010).

14          The cases on which defendants rely are not persuasive when evaluating a motion

15  to dismiss. *See* Mot. at 15-16; *see, e.g.*, *Brawley v. Punt*, 186 F. Supp. 3d 1102, 1116 (C.D. Cal.

16  2016) (granting summary judgment because plaintiff's ratification argument based "entirely on"

17  police chief's statement that officer's use of deadly force was justified and within city's policy

18  and guidelines); *Long v. City & Cty. of Honolulu*, 378 F. Supp. 2d 1241, 1242, 1248 (D. Haw.

19  2005), *aff'd*, 511 F.3d 901 (9th Cir. 2007) (granting summary judgment because "failing to

20  discipline [the officer] (or otherwise having a defective internal affairs investigation policy)" was

21  a theory that failed "for lack of causation" and observing "[e]ven if the after-the-fact internal

22  investigation here was somehow a 'coverup' (and there is no such evidence), it would not have

23  prevented the shooting of [Keenan]"). Plaintiffs' allegations involve more than a single, isolated

24  decision by Moore and include allegations of how Moore's conduct affected other county

25  employees. *See, e.g.*, SAC ¶¶ 82, 79, 93.

26          D.    <u>Denial of Familial Relationship: Fourteenth Amendment</u>

27          Defendants contend plaintiffs have failed to allege a Fourteenth Amendment claim

28  for deprivation of familial relationship because plaintiffs' alleged facts are that Keenan "was a

bystander," and Keenan "was hit by a bullet because [Knight] shot negligently." Mot. at 11-12. Plaintiffs argue they sufficiently allege a Fourteenth Amendment violation under either the "purpose to harm" standard or the deliberate indifference standard. Opp'n at 19. For the reasons below, the court finds plaintiffs sufficiently plead both deliberate indifference and purpose to harm for their Fourteenth Amendment claim to proceed.

The Fourteenth Amendment's substantive due process clause protects against the arbitrary or oppressive exercise of government power. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "[T]he Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (internal quotation marks and citation omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" or "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process decision. *Id.* at 848-49.

"Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Wilkinson*, 610 F.3d at 554 (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). But "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* (citing *Porter*, 546 F.3d at 1140). In *Porter*, the Ninth Circuit found actual deliberation was not practical where a five-minute altercation between officers and victim evolved quickly and forced the officers to make "repeated split-second decisions." 546 F.3d at 1139. As the Ninth Circuit has observed, the Supreme Court has rejected a "narrow" concept of deliberation, rejecting the deliberate indifference standard for high speed chases "even though logically an officer giving chase could deliberate even while accelerating after a suspect." *Id.* at 1139-40 (citing *Lewis*, 523

21

U.S. at 851 n.11). "When an officer creates the very emergency he then resorts to deadly force to resolve, he is not simply responding to a preexisting situation. His motives must then be assessed in light of the law enforcement objectives that can reasonably be found to have justified his actions." *Id.* at 1141.

Here, the complaint contains sufficient allegations to infer Knight had an opportunity to deliberate. Knight was involved in a sale near his residence. SAC ¶¶ 27-28. "Before firing the shots that killed" Keenan, Knight drew a concealed firearm, "announced his status as a Deputy Sheriff and yelled 'get down, get down.'" *Id.* ¶ 30. But "no one was brandishing a weapon in view of Knight or pointing a gun at Knight," Keenan was unarmed, Keenan posed no threat to Knight [or anyone else], Keenan was not resisting arrest and "there was not a serious crime in progress because Knight was a knowing participant in the transaction involving the other individuals present." *Id.* ¶¶ 32-36, 42. Police investigators uncovered "no evidence that any other weapon was fired," and Keenan was walking away from Knight when struck by a bullet from Knight's firearm. *Id.* ¶¶ 40-41.

Although Knight's actions might have occurred in a compressed period of time, plaintiffs' allegations are of "an officer [who] creates the very emergency he then resorts to deadly force to resolve, [so] he is not simply responding to a preexisting situation." *Porter*, 546 F.3d at 1141. Knight's "motives must then be assessed in light of the law enforcement objectives that can reasonably be found to have justified his actions." *Id.* Here, plaintiffs allege an absence of legitimate law enforcement objectives in the use of force despite what may be construed as an escalating situation in another light. *See* SAC ¶¶ 28, 98, 107. Plaintiffs allege Knight engaged in an illicit transaction before invoking his law enforcement status and firing at Keenan. *Id.* ¶¶ 28, 30-31, 98 ("Knight was engaged in sales on the black market and illicit and ultra vires dealings with police informants."). Plaintiffs sufficiently plead Knight's deliberate indifference by his creation of the very emergency his use of deadly force was intended to resolve. Plaintiffs also sufficiently plead that Knight acted with a purpose to harm because his conduct was not related to legitimate law enforcement objectives. *See also id.* ¶ 58 (Knight stating to someone "that he had shot at four individuals, that he hit two and that three got away"); *id.* ¶ 107 (Knight's acts "were

22

perpetrated with a purpose to harm [Keenan] for reasons unrelated to legitimate law enforcement objectives, as they related to illicit and ultra vires dealings with government informants.").

Although as noted plaintiffs plead "Knight fired the firearm recklessly," SAC ¶ 37, "deliberate or reckless indifference" is sufficient where the defendant also had time to deliberate. *See Wilkinson*, 610 F.3d at 554; *Porter*, 546 F.3d at 1137-40. As the court has observed above, plaintiffs remain free to plead alternative theories of liability. *See Unified Western Grocers, Inc.*, 457 F.3d at 1112.

Defendants' citation to *Rodriguez*, 819 F. Supp. 2d at 949, does not alter the court's conclusion. There, in analyzing plaintiff's Fourteenth Amendment claim, the court emphasized "it is important that the court maintain its focus on [the officer's] actions" as to plaintiff, not the intended target of the officer's fired shots. *Id.* But as discussed previously, unlike the unintended shooting of the plaintiff in *Rodriguez*, plaintiffs here have not alleged Knight shot negligently or shot Keenan while aiming at someone else. Instead, plaintiffs allege Knight intentionally shot at Keenan, among others. *See* SAC ¶¶ 30-31, 58 (Knight stating to someone "that he had shot at four individuals, that he hit two and that three got away").

The court DENIES defendants' motion to dismiss plaintiffs' Fourteenth Amendment claim.

> E.    Bane Act Standing and Pleading Sufficiency

Defendants primarily argue plaintiffs do not sufficiently allege the specific intent required for a Bane Act claim and further contest plaintiffs' standing in a footnote. Mot. at 20 & n.9. Plaintiffs contend they properly plead specific intent. Opp'n at 23. For the reasons below, the court finds plaintiffs have standing to bring the claim as a survival action and sufficiently plead specific intent, but are precluded from using the Bane Act as a basis for their derivative claim.

The Bane Act prohibits any person from interfering by "threats, intimidation or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution . . . ." Cal. Civ. Code § 52.1(a). The Bane Act does not contain "a wrongful death provision" and "does not provide derivative liability for the parents of a victim of a hate crime, or

for any other persons not present and not witnessing the actionable conduct." *Medrano v. Kern County Sheriff's Officer*, 921 F. Supp. 2d 1009, 1015-16 (E.D. Cal. 2013) (citing *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995)). Although the Bane Act provides standing for properly pleaded survival actions, it does not provide standing for a wrongful death cause of action. *Id.*

"[T]he egregiousness required by [the Bane Act] is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 799, 801 (2017)). The Ninth Circuit has found the *Cornell* court "adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91 . . . (1945)." *Reese*, 88 F.3d at 1043. Under the *Screws* specific intent standard for an excessive force violation, "a mere intention to use force that the jury ultimately finds unreasonable—that is, general criminal intent—is insufficient . . . ." *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993). A reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights. *Reese*, 888 F.3d at 1045 (citing *Reese*, 2 F.3d at 885).

By alleging Knight intentionally or recklessly shot at Keenan, plaintiffs sufficiently plead Knight's specific intent to deprive Keenan of his constitutional rights. SAC ¶¶ 30-31, 58 ("Knight stated to someone . . . that he had shot at four individuals, that he hit two and that three got away.")); *id.* ¶ 37 ("Knight fired the firearm recklessly."); *id.* ¶ 92 (Knight's conduct "was willful, fraudulent, malicious, oppressive and in reckless disregard of the constitutional rights of [Keenan] . . . ."); *id.* ¶ 102 (Knight "acted maliciously, fraudulently, oppressively, and in reckless and callous disregard for the constitutional rights of [Keenan] by unlawfully subjecting [Keenan] to deadly force . . . ."). But because the Bane Act does not supply standing for derivative claims, plaintiffs lack standing to bring the claim by asserting the Fourteenth Amendment violation and wrongful death action. To the extent plaintiffs have alleged any derivative Bane Act claim, the court GRANTS defendants' motion to dismiss that derivative

Bane Act claim without leave to amend, but otherwise DENIES defendants' motion as to plaintiffs' Bane Act claim.

Defendants have asserted plaintiffs cannot plead conspiracy to violate the Bane Act "because of the established rule that there is no claim for conspiracy between an agent and his principal." Mot. at 20 (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576 (1973)). But that rule applies to "non-insurer defendants" who were "agents and employees of the defendant insurers" involving a claim for breach of the implied covenant of good faith and fair dealing, not a constitutional tort. Additionally, plaintiffs' pleading that "defendants conspired to perpetrate the acts that they perpetrated in violation of the Bane Act" does not necessarily indicate an agent-employee relationship. Regardless, multiple courts have rejected defendants' arguments that "under California law, one cannot be held liable for conspiring to violate [the Bane Act]." *Warner v. Cty. of San Diego*, No. 10CV1057 BTM(BLM), 2011 WL 662993, at *3 n.1 (S.D. Cal. Feb. 14, 2011) (collecting cases); *Allen v. Cty. of Lake*, No. 14-cv-03934-TEH, 2015 WL 434990, at *7 (N.D. Cal. Feb. 2, 2015) ("[C]ourts have repeatedly recognized a cause of action for conspiracy to violate the Bane Act.").

F.      Keenan Bradley, Sr.'s Compliance with California's Government Claims Act

Defendants assert that plaintiff Keenan Bradley, Sr. did not comply with the Government Claims Act, precluding his state law claims. Mot. at 18-19. Plaintiffs concede as much, which has the effect of barring his state law claims. Opp'n at 25-26. Plaintiffs also concede Bradley, Sr. cannot cure this defect. *Id.* The court therefore GRANTS defendants' motion to dismiss Bradley, Sr.'s state law claims without leave to amend. *See Cafasso*, 637 F.3d at 1058 (district court was "well within its discretion to deny leave to amend" where amendment was futile).

G.      Denial of Medical Care: State Law Claim

Defendants argue plaintiffs' denial of medical care claim should be dismissed because plaintiffs have not alleged sufficient facts to support that claim. Mot. at 21. Plaintiffs concede California Government Code section 845.6 does not apply here because Keenan was not an inmate or prisoner at the time of the incident, a required condition for the statute to apply.

Opp'n at 24-25. But plaintiffs do contend the second amended complaint alleges sufficient facts to indicate they may properly plead the claim under the Fourth Amendment theory discussed in *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (Due Process Clause requires provision of medical care to a person injured while being apprehended)). *See* SAC ¶¶ 52-53, 57, 59, 60 (alleging Knight did not summon medical aid for Keenan "urgently," Knight did not render aid to Keenan himself and Knight "failed to call for medical aid and delayed calling for medical aid"). "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) (citing *Revere*, 463 U.S. at 245).

Because plaintiffs' alleged facts indicate Knight failed to render medical aid or summon medical aid for Keenan for some period of time, the court grants plaintiffs leave to amend the complaint to focus their allegations so as to maintain a proper claim based on this conduct. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The court therefore GRANTS defendants' motion to dismiss this claim with leave to amend.

IV.     <u>CONCLUSION</u>

For the reasons set forth above, the court GRANTS defendants' motion to dismiss in part and DENIES it in part as follows:

1.     Defendants' motion to dismiss plaintiffs' Fourth Amendment claim is DENIED;

2.     Defendants' motion to dismiss plaintiffs' Fourteenth Amendment claim is DENIED;

3.     Defendants' motion to dismiss plaintiffs' federal municipal liability claim is DENIED, but plaintiffs are granted leave to amend their claims to state additional theories of municipal liability if they can, while complying with Federal Rule of Civil Procedure 11;

/////

26

4.      Defendants' motion to dismiss plaintiffs' state law claims against the County based on Knight's acting outside his scope of employment is DENIED;

5.      Defendants' motion to dismiss plaintiffs' Bane Act claim is GRANTED in part without leave to amend to the extent it is brought as a derivative claim, but otherwise is DENIED;

6.      Defendants' motion to dismiss plaintiff Keenan Bradley Sr.'s state law claims is GRANTED without leave to amend;

7.      Defendants' motion to dismiss plaintiffs' denial of medical care state law claim is GRANTED with leave to amend; and

8.      Plaintiffs must file any amended complaint within 14 days.

IT IS SO ORDERED.

This resolves ECF No. 31.

DATED:  August 23, 2018.

_____
UNITED STATES DISTRICT JUDGE