UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE L. BRADLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN JOAQUIN, et al.,<br><br>Defendants. | No. 2:17-cv-02313 KJM AC<br><br><br><br>ORDER |

This matter comes before the court on plaintiff's motion to compel, ECF Nos. 46, 47, 53, pursuant to E.D. Cal. R. 302(c)(1). All parties appeared by counsel at a hearing on September 5, 2018 at 10:00 a.m. ECF No. 55. For the reasons stated below, the court GRANTS plaintiffs' motion as to documents SJC 194-325 and SJC 131-193, which must be produced with necessary redactions, and otherwise DENIES the motion.

**I.   Relevant Background**

The background of this case has been set forth in District Judge Kimberly J. Mueller's recent order on a Motion to Dismiss. ECF No. 52. That history is reproduced here nearly verbatim, for ease of reference. On November 1, 2016, decedent Keenan Bradley, Jr. ("Keenan") was present at the apartment complex located at 3525 W. Benjamin Holt Drive in Stockton, California. Second Amended Complaint ("SAC") ¶ 18, ECF No. 26-1. Keenan was in the process of leaving the apartment complex between 9:30 and 10:18 p.m. Id. ¶ 26. Defendant

1

Michael Knight is a deputy sheriff for San Joaquin County. Id. ¶¶ ix, 29. On and before November 1, 2016, Knight resided in an apartment in the complex at 3525 W. Benjamin Holt Drive. Id. ¶¶ 27-28. While Keenan was leaving the complex, Knight was engaged in an illicit transaction in the parking lot. Id. ¶¶ ix, 28. Keenan was a bystander to some part of this transaction. Id. ¶ 43. During Knight's illicit transaction, Knight drew a concealed handgun and declared his status as law enforcement before issuing a command. Id. ¶¶ 30-31. Knight commanded individuals to "get down." Id. ¶ 30. Knight then fired the handgun at individuals in the parking area, striking and fatally wounding Keenan. Id. ¶¶ 37, 39, 41, 58.

After the shooting began, Toney Lay, aka "Hector," and Lamar Brown, aka "Marty," ran toward a silver car, got in, and sped off towards and out of the east exit of the apartment complex. Id. ¶ 44. Patrick Fox, who is Lamar Brown's uncle, ran toward a black car, got in, started the car and sped off towards and out of the west exit of the apartment complex. Id. ¶ 45. Plaintiffs allege that Fox is a repeat felon who traffics in illegal narcotics, and that Knight knew and had a working relationship with Fox before he shot and killed Keenan. Id. ¶¶ 47-48. Two witnesses attempted to render aid to Keenan. Id. ¶¶ 51, 55-56. Knight then asserted authority over the area by purporting to act in his law enforcement capacity and secure the scene, preventing the witnesses' continuation of care to Keenan. Id. ¶ 60. Knight did not attempt to render medical care to Keenan himself. Id. ¶ 59. Knight made at least one phone call to someone, not identified in the complaint, stating "that he had shot at four individuals, that he hit two and that three got away." Id. ¶ 58. An ambulance arrived approximately fifteen minutes after the shooting. Id. ¶ 53. By 10:45 p.m., a police "Do Not Cross" line existed, and plaintiff Denise Bradley, Keenan's mother, was not permitted to enter the area. Id. ¶¶ 70-71. According to the death certificate, Keenan died at 11:14 p.m. Id. ¶ 72.

At or about 12:00 a.m., the San Joaquin County Sheriff's Department "engaged a U-Haul truck, brought it to" Knight's apartment behind the "Police Do Not Cross" area, and removed "all of his belongings, permanently removing [Knight] from the apartment." Id. ¶ 73. Defendant Steve Moore is the Sheriff-Coroner for San Joaquin County. Id. ¶ viii. Moore "worked in concert" with Knight "to distort facts and come up with a false narrative" to "facilitate their

cover-up of the events that culminated . . . with the unlawful killing of [Kennan], including falsification of the . . . account of the incident (through Knight) and the timeline," witness tampering and evidence tampering. Id. ¶ 74. The investigation into the incident is ongoing. Id. ¶¶ 78, 82.

Before the shooting, Keenan had no problems with law enforcement. Id. ¶ 1. He was not the target of any pending investigation, and there was no warrant or probable cause for his arrest. Id. Keenan did not possess a firearm. Id. ¶ 14. Keenan was not a member or affiliate of a criminal gang. Id. ¶ 15. On the night of the incident, Keenan was at the complex and was visiting friends who lived in the complex at 3525 W. Benjamin Holt Drive. Id. ¶¶ 18-19, 24. At the time of the incident, Keenan was leaving the complex to take his cousin to work, as he did routinely. Id. ¶¶ 20-23. Knight allegedly found a firearm near Keenan, picked up the firearm and "placed [it] under [Keenan's] arm." Id. ¶ 61. However, an official investigation revealed "an absence of gunshot residue on [Keenan's] person," and Keenan's fingerprints "were not found on any [firearm] allegedly found near the location of the fatal shooting where [Keenan] died." Id. ¶¶ 62-63.

Plaintiff Denise Bradley filed the initial complaint on November 3, 2017, both individually and as the personal representative of Keenan. ECF No. 1. Following a grant of leave to amend, plaintiffs filed a corrected second amended complaint, the operative complaint, on April 24, 2018. ECF No. 26-1. Defendants moved to dismiss portions of the SAC (ECF No. 31) and on August 23, 2018 their motion was denied in part and granted in part, with partial leave to amend. ECF No. 52. Plaintiffs brought one prior motion to compel, which was denied without prejudice for failure to meet and confer. ECF No. 45.

## II.  Motion

Plaintiffs ask the court to compel further responses to the requests for production ("RFPs") 1-9, 10, and 11. ECF No. 53. Plaintiffs contend that (1) defendants improperly rely on various "boilerplate" objections; (2) defendants improperly rely on various privileges; (3) defendants are not entitled to withhold documents pursuant to the Official Information privilege; (4) defendants have not identified all documents that are being withheld, as required by Fed. R.

3

Civ. P. 34(b)(2)(C); (5) defendants have not stated whether documents produced have been produced in response to a specific request, or whether they are produced exactly as ordered and kept in the ordinary course of business, as required by Fed. R. Civ. P. 34(b)(2)(E)(i); and (6) defendants have improperly failed to produce defendant Knight's background information. Defendants contend that plaintiffs failed to meaningfully meet and confer with respect to this motion. ECF No. 53 at 19. Defendants represent that they conferred with plaintiff on several occasions and believed that they had resolved all of the issues presented by the motion. Id. at 20. Nonetheless, defendants seek a ruling on the merits of this motion "to protect them from continued abuses of the discovery process by Plaintiffs' counsel[.]" Id. at 21. With the parties in agreement that a ruling on the merits is necessary at this juncture, the matter will proceed despite the dispute over whether the meet and confer process was adequate.

### III.   Analysis

A. Legal Standard

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26. Under the amended Rule 26,

4

relevance alone will not justify discovery; discovery must also be proportional to the needs of the case.

A party seeking to compel discovery has the initial burden to establish that its request is proper under Rule 26(b)(1). If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975). General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim. Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir.2005).

B. Discussion

1. RFPs 1-8

Plaintiffs seek information regarding the criminal history and background of Patrick Fox, the drug dealer who was present at the scene of the shooting. The complaint alleges that defendant Knight was involved in illicit activity, and that he had an ongoing relationship with Fox; defendants contend to the contrary that Knight was a victim of attempted robbery. Accordingly, information regarding Fox is of obvious relevance to the case, and defendants have already made a significant production. Plaintiffs' motion to compel further responses fails, because they have not demonstrated the relevance and proportionality of materials above and beyond what has already been produced.

The first RFP seeks "[a]ll documents in the possession, custody or control of the Office of the District Attorney relating to any arrest of Patrick A. Fox, DOB [omitted]." ECF No. 53-2 at 3. RFP No. 2 is the same, except it seeks documents related to any "indictment of or criminal complaint against" Mr. Fox. Id. RFP No. 3 seeks documents related to Mr. Fox's status or work as an informant for any law enforcement agency. Id. RFP No. 4 seeks documents from the District Attorney's office related to felony or misdemeanor convictions sustained by Mr. Fox. RFP No. 5 seeks documents from the San Joaquin County Sheriff's Office related to misdemeanor or felony convictions of Mr. Fox. Id. RFP No. 6 seeks documents from the Sheriff's Office related to any arrest of Mr. Fox. Id. RFP No. 7 seeks documents from the

1   Sherriff's Office related to any criminal indictment or complaint against Mr. Fox. Id. FRP No. 8
2   seeks documents from the Sherriff's Office with respect to Mr. Fox's work as an informant for
3   any law enforcement agency. Id. at 4.

4   Plaintiffs argue first that defendants have relied on invalid "boilerplate" objections. ECF
5   No. 53 at 26-39. This argument fails to support compelled production. It is plaintiffs' burden as
6   the moving party to demonstrate relevance and proportionality; they have not done so. Id. at 35-
7   38. Defendants clarify for the court that "[a]ccording to Plaintiffs, Mr. Fox was a witness to
8   some, or all, of the events at issue. Plaintiffs' counsel has asserted on multiple occasions he
9   believes Mr. Fox was (or is) an informant, working for either the San Joaquin County Sheriff's
10  Department, the San Joaquin County District Attorney's Office, and/or some other unidentified
11  law enforcement agency. Id. at 39. Defendants assert that, following meet and confer sessions on
12  July 18 and July 31, defense counsel informed plaintiffs' counsel "that Mr. Fox had an extensive
13  criminal history going back to the early 1990's, and thus digging up all of the requested records
14  would be time-consuming and burdensome, with no apparent connection or value to the case.
15  Further, Defendants' counsel also informed Plaintiffs' counsel Mr. Fox was not a known
16  informant to either the Sheriffs' Department or the District Attorney's Office." ECF No. 53 at 40.

17  The meet and confer communications between the parties establish that they had, at one
18  point, reached an agreement on proportional responses to the RFPs regarding Mr. Fox's criminal
19  history. Defense counsel's July 31 email and Plaintiffs' counsel's August 1 email (see Exhibits F
20  and G to the Declaration of Joshua J. Stevens) indicate the parties agreed to limit the scope of
21  these requests to all felony and misdemeanor criminal complaints filed in San Joaquin County
22  against Mr. Fox from January 1, 2008, to the present. Defense counsel informed Plaintiffs'
23  counsel that this would include only two such complaints. ECF No. 54 at 36. Defendants
24  submitted their amended responses to Plaintiffs' counsel. See Plaintiffs' Exhibit J.
25  Having considered the scope of the SAC, the RFPs, and the arguments presented by the parties,
26  the court finds that the parties' previous agreement to limit production of Mr. Fox's criminal
27  history to the past 10 years is reasonable and is proportionate to the case. Additional production
28  would be disproportionate and would unduly burden defendants. The court is persuaded that the

1   10-year scope of production for Mr. Fox's criminal records is sufficient and will not compel

2   further production as to RFP Nos. 1, 2, 4, 5, 6 and 7.

3   As to the RFPs regarding Mr. Fox's informant status (RFP Nos. 3, 8), defendants expressly stated in their amended responses that Mr. Fox is not a known informant for either the Sheriffs' Department or the District Attorneys' Office. ECF No. 53-11 at 7, 15-16. A response that no documents exist is a perfectly acceptable response to a request for production. Id. In their amended responses, defendants reiterated that they would provide copies of felony and misdemeanor complaints for Mr. Fox going back to January 1, 2008. Id. At hearing on the motion, defense counsel represented that he had inquired whether Mr. Fox is known to other law enforcement agencies as an informant, and received a negative response. Counsel offered to put this representation into writing. No further production can be ordered as to RFP Nos. 3 or 8.

2. RFP No. 9

Plaintiff's RFP No. 9 seeks documents from the San Joaquin County Sherriff's Office relating to the hiring of defendant Michael Knight. Defendants object on numerous grounds, primarily on the basis of privacy, relevance, and proportionality. ECF No. 53-11 at 17-18. Defendants have offered the documents Bates numbered SJC 85-88 and 131-325 to the court for in camera review. Id. Indeed, plaintiffs' counsel confirmed in meet and confer correspondence that this information was to be made available for the court for in camera review, and would be the subject of an informal discovery conference. ECF No. 54 at 39.

The parties' agreement should have obviated the need for a motion to compel. Plaintiff is correct that the official information privilege is qualified, and that sufficiently probative information would override its assertion. Kerr v. U.S. Dist. Court for N. Dist. of California, 511 F.2d 192, 198 (9th Cir. 1975) (noting that the official governmental privilege is generally "only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken[.]") At the September 5, 2018 hearing on this motion, defendant voluntarily produced to the court the relevant files for in camera review. Upon review, the court has determined that the documents Bates numbered SJC 194-325 and SJC 131-193 are relevant and appropriate for production, with redactions for

7

personal identifying information such as social security numbers.  Although this production is ordered, plaintiff will not be entitled to fees based on this victory.  Because defendants have long been willing to produce the documents at issue for in camera review, there was no need for this issue to be the subject of a motion to compel.  An award of fees or costs under such circumstances would be entirely unjust.  Fed. R. Civ. P. 37(a)(5)(A)(iii).

        3. <u>RFP No. 10</u>

Plaintiffs' RFP No. 10 seeks "[t]he entire file relating to any internal affairs investigation of the shooting of Keenan S. Bradley on or about November 1, 2016."  ECF No. 53-3 at 3.  Defendants object to production based on the deliberative process privilege, official information privilege, and centrally, the ongoing law enforcement investigation privilege.  ECF No. 53-12 at 3-4.  In the most recent RFP response, defense counsel committed to produce the responsive documents, subject to appropriate redaction and any necessary protective order, once the ongoing investigations are complete.  <u>Id.</u> at 4.  In the joint statement, defendants appear only to invoke the ongoing investigation privilege.  ECF No. 53 at 78-80.

The ongoing law enforcement investigation privilege protects documents that may harm law enforcement efforts due to public disclosure of investigatory files.  <u>Tuite v. Henry</u>, 181 F.R.D. 175, 176–177 (D. D.C. 1998), aff'd, 203 F.3d 53 (D.C. Cir. 1999); <u>see also</u>, <u>Shelley v. County of San Joaquin</u>, 2015 U.S. Dist. LEXIS 58285, 2015 WL 2082370 (E.D. Cal. May 4, 2015) (holding that the investigative privilege barred public disclosure because such disclosure "plausibly could undermine these investigations").  The burden of establishing the privilege rests with the party claiming it.  <u>Shelley</u>, 2015 WL 2082370, at *3.  "In order to assert the law enforcement investigation privilege, the party asserting the privilege must again make a substantial threshold showing by meeting certain elements including: (1) asserting a formal claim of privilege by the head of the department with control over the requested information; (2) the assertion of the privilege must be based on personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation as to why it falls within the scope of the privilege."  <u>Noble v. City of Fresno</u>, No. 1:16-cv-01690-DAD-BAM,

////

2017 WL 5665850, at *5 (E.D. Cal. Nov. 27, 2017), referencing <u>Conan v. City of Fontana</u>, 2017 WL 2874623 (C.D. Cal. July 5, 2017).

To support their claim of ongoing investigation privilege, defendants submit the declaration of Robert Himelblau, the Supervising Deputy District Attorney of the Special Operations Unit, initially served in response to a subpoena issued by plaintiffs. ECF No. 54 at 117-19. Mr. Himelblau states in his declaration that he oversees matters pertaining to the "Officer Involved Critical Incidents Unit" which handles officer involved shootings. <u>Id.</u> at 1. Mr. Himelblau explains in his declaration that he has control over the relevant information, and that it is related to three open and separate ongoing investigations, including (1) an investigation into the attempted armed robbery of off-duty Sherriff's Deputy Michael Knight, (2) an investigation into the death of Keenan S. Bradley, Jr., and (3) an investigation into Denise Bradley's accusations that Deputy Knight was engaged in criminal activity or other wrongdoing in connection with the shooting. <u>Id.</u> The declaration goes on to specify how the requested information, if disclosed, could harm the investigation. <u>Id.</u> at 118.

The court is mindful of the important law enforcement interests that are protected by the ongoing investigation privilege. However, those interests may not be permitted to indefinitely frustrate the operation of the Federal Rules, the liberal discovery practices established by those Rules, and – most importantly – the vigorous enforcements of the civil rights statutes. See <u>Noble</u>, 2017 WL 5665850, at *7. Mr. Himelblau's declaration gives no indication of an anticipated end date to the pending investigations, and defense counsel when asked at hearing on the motion could not predict when the investigations might conclude. In similar circumstances, the court in <u>Noble</u> reasoned as follows:

> Additionally, while the pendency of a criminal investigation can be a reason for denying discovery of investigative documents, this privilege does not apply indefinitely. The officer-involved shooting here took place well over a year ago . . . Defendants have not completed their own internal administrative investigation and are not at liberty to guess when the FBI's investigation will be complete. Such an indefinite timeframe is unreasonable. Private litigants have certain rights and municipal entities may not retain documents indefinitely and keep them from disclosure on a statement that a self-imposed investigation is still continuing. There must be a reasonable terminus. To hold otherwise would be in conflict with two major

9

> federal policies, i.e., the vigorous enforcement of the civil rights statutes and the broadest possible scope of discovery in civil rights litigation.

Noble, 2017 WL 5665850, at *7.

It is almost two years since the death of Kennan Bradley, Jr. As in Noble, indefinite assertion of the ongoing investigation privilege would have the effect of unreasonably delaying the progress of this case and frustrating the interests of justice. Accordingly, plaintiffs' motion to compel is granted as to RFP 10. Responsive materials within the possession of the County must be disclosed pursuant to a protective order.

4. RFP No. 11

Plaintiffs' FRP No. 11 seeks "[a]ll complaints of misconduct brought by any person against defendant Knight that are in the possession, custody or control of the San Joaquin County Sheriff's Office, and all associated documents and files pertaining to (1) such complaints and (2) any actions taken by the County of San Joaquin or any of its subdivisions in response to the complaints." ECF No. 53-3 at 3. Defendants, in their supplemental response served August 8, 2018, affirmed that it has "no documents responsive to this request other than those already produced." ECF No. 53-12 at 5. Defendant produced documents related to plaintiff Denise Bradley's complaint against defendant Knight. Id. As discussed above, counsel's signed statement that no responsive documents exist is a valid response to a request for production. Plaintiff's motion to compel a further response to RFP No. 11 is denied.

### IV. Conclusion

Defendant's motion to compel is GRANTED as to documents SJC 194-325 and SJC 131-193 and as to RFP 10; associated documents must be produced within 10 days following entry of a stipulated protective order per District Judge Kimberly J. Mueller's Order at ECF No. 57. The motion is otherwise DENIED.

IT IS SO ORDERED.

DATED: September 20, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE